# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Betsy Santello,                                            :
                              Petitioner                    :
                                                            :
            v.                                              :     No. 142 C.D. 2015
                                                            :     SUBMITTED:  July 17, 2015
Pennsylvania Housing Finance                                :
Agency,                                                     :
                              Respondent                    :


BEFORE:     **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge
            **HONORABLE ROBERT SIMPSON,** Judge
            **HONORABLE JAMES GARDNER COLINS,** Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                              **FILED:  November 24, 2015**


            Betsy Santello (Petitioner), proceeding pro se, petitions for review of the December 16, 2014, Order of the Pennsylvania Housing Finance Agency (PHFA) denying her loan application under the Homeowner's Emergency Mortgage Assistance Program (HEMAP). PHFA found that she is not suffering financial hardship due to circumstances beyond her control. As we discern no error, we affirm.

            Petitioner and her husband were notified by their lender that their home mortgage was in default and that the lender intended to foreclose.

(Supplemental Reproduced Record (SRR) at 7b-10b)[1]. Petitioner sought assistance from a consumer credit counseling agency and applied to PHFA for a HEMAP loan. (SRR at 11b-14b). PHFA denied Petitioner's application on the basis that she was not suffering financial hardship due to circumstances beyond her control as: her and her husband's net monthly income was sufficient to maintain the mortgage had it been a priority; the financial hardship was due to money mismanagement; and the mortgage delinquency was not beyond her control where net monthly income exceeded total monthly expenses. (SRR at 15b-16b). Petitioner appealed and received an administrative appeal hearing before a PHFA hearing examiner. (SRR 17b-23b). The hearing examiner held a telephonic hearing at which Petitioner testified. (SRR 26b-44b). By letter dated December 16, 2014, the hearing examiner advised Petitioner that based on findings of fact developed from the hearing record PHFA properly denied her application for a HEMAP loan as the mortgage delinquency was not due to circumstances beyond her control. (SRR at 1b-6b).

Petitioner here argues that her financial hardship is due to circumstances beyond her control. She cites the loss of her full-time job in 2009 and her subsequent reliance on a series of part time positions as well as the depletion of her savings from making earlier mortgage payments. She also argues that the hearing examiner listed her payroll deductions as $143.59 per month but that those deductions are $221.00 biweekly. Accordingly, she requests that we reverse PHFA's decision to deny her application for the HEMAP loan program.

---

[1] Petitioner was excused from filing a reproduced record. PHFA filed a Supplemental Reproduced Record with its brief.

We will treat Petitioner's argument as an assertion that the hearing examiner's findings are not supported by substantial evidence and that she erred as a matter of law in concluding that the Petitioner's financial hardship is not due to circumstances beyond her control.[2]

The General Assembly established HEMAP through the Homeowner's Emergency Assistance Act[3] (Act) to, as stated in the preamble, prevent widespread mortgage foreclosures and distress sales of homes by providing emergency assistance to Pennsylvania homeowners who face default due to circumstances beyond their control. To qualify for emergency assistance and receive a HEMAP loan a homeowner must satisfy the requirements enumerated in Section 404-C(a) of the Act, 35 P.S. § 1680.404c(a). Relevant to this matter, Section 404c(a) provides that:

> **(a)** No assistance may be made with respect to a mortgage or mortgagor under this article unless all of the following are established:
>
> . . .
>
> **(4)** The mortgagor is a permanent resident of this Commonwealth and is suffering financial hardship due to circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency or delinquencies within a reasonable time and make full mortgage payments.

---

[2] Based on the issues raised here, our scope of review is limited to determining if an error of law was committed or if findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[3] Act of December 3, 1959, P.L. 1688, added by Act of December 23, 1983, P.L. 385, *as amended*, 35 P.S. §§ 1680.401c-1680.412c.

35 P.S. § 1680.404c(a)(4).

The Act does not define "circumstances beyond the mortgagor's control." In this circumstance, PHFA's interpretation is entitled to great weight and should be disregarded only if such construction is clearly erroneous. *Johnson v. Pa. Housing Fin. Agency*, 512 A.2d 1319, 1322 (Pa. Cmwlth. 1986). In assessing whether a mortgagor's financial hardships are due to circumstances beyond her control, Section 404-C(a)(10) of the Act, 35 P.S. § 1680.404c(a)(10), provides that PHFA may consider information regarding the mortgagor's employment record, credit history and current income. PHFA's regulations at 12 Pa. Code § 31.205 provide additional guidance as to what circumstances are or are not beyond the mortgagor's control.

We have held that voluntary decisions including employment choices and allocation of funds may be considered circumstances not beyond the mortgagor's control. *See, e.g.*, *Felegie v. Pa. Housing Fin. Agency*, 523 A.2d 417, 419-420 (Pa. Cmwlth. 1987) (Where Felegie voluntarily terminated his employment, resulting financial hardship was not caused by circumstances beyond his control); *Johnson*, 512 A.2d at 1321-1322 (PHFA reasonably concluded that Johnson's need for mortgage assistance was not the result of circumstances beyond his control where he did not keep money available to pay his mortgage arrearage while he was employed, and his voluntary absenteeism caused him to lose his employment); *Crawl v. Pa. Housing Fin. Agency,* 511 A.2d 924, 926-927 (Pa. Cmwlth. 1986) (Petitioner's delinquency was not a result of events beyond her control where arrearage in payment was a direct result of her conscious decision to forego gainful employment and to attend school).

Turning to the instant matter, the hearing examiner concluded that Petitioner's (including her husband's) income should have been sufficient to maintain the mortgage payments or to have saved funds that could have been used to reduce the delinquency, and on that basis determined that her financial hardship was not due to circumstances beyond her control. (SRR at 6b). Based upon Petitioner's initial HEMAP application and her statements during the hearing, the hearing examiner found that Petitioner's (again inclusive of her husband's) average monthly net income was approximately $1865.34 to $1912.19 allowing for variations in hours worked. (SRR at 3b-6b). The hearing examiner further found that Petitioner's average monthly housing expense including the $377.44 mortgage payment was $781.72 and that living expenses totaled $772.11. *Id.* This latter sum does not include unsecured installment debt of $1063.37 that Petitioner and her husband were not paying. (SRR at 5b). The hearing record shows that Petitioner identified monthly payroll deductions totaling $143.59. *Id.* The sum of the monthly expenses (not including the installment debt) identified at the hearing total $1697.42. *Id.*

The hearing examiner also noted that Petitioner in 2013 received $55,580 in pension/annuity funds and a tax refund in 2014 of $1336. *Id.* The record also shows that Petitioner chose to attend school for two years after her layoff to obtain an associate's degree and that she did not work during this period (SRR at 32b), and that her husband was released from his employment in 2011 but did not collect unemployment due to a safety infraction. (SRR at 35b-36b). Petitioner's husband began work again in 2014 but the record is silent as to any efforts to obtain employment between 2011 and 2014. Petitioner testified she and her husband considered bankruptcy in April 2013 apparently to eliminate the

5

unsecured installment debt but did not file on the advice of counsel after Petitioner inherited a one-half interest in her mother's property. (SRR at 38b-39b). After acquiring the half interest Petitioner paid all of the expenses related to that property for six months, her financial condition notwithstanding. (SRR at 39b). She testified that she and her sister planned to sell the property and that she thought she could receive $15,000 from the sale. *Id*. The record does not show that Petitioner supplied any documentation that a sale occurred.

Petitioner cites the loss of her full time job in 2009 and her subsequent reliance on a series of part-time positions as well as the depletion of her savings from making earlier mortgage payments as the cause of her financial hardship. Before the hearing examiner, Petitioner also cited the need to purchase tires as an additional cause. (SRR at 66b). However, the record shows that only one tire was purchased in February 2014 prior to the mortgage delinquency at a cost of $84.21 (SRR at 77b-78b), and that her mortgage did not become delinquent until approximately three months after that purchase (SRR at 7b-11b).

Our review of the record has satisfied us that the hearing examiner's findings are supported by substantial evidence. We also are satisfied that the hearing examiner did not err as a matter of law when she concluded that Petitioner's financial hardship was not due to circumstances beyond her control. The record including Petitioner's HEMAP application and her testimony shows that Petitioner's circumstances, while undoubtedly difficult, were impacted largely by choices she and her husband made regarding resource allocation, school attendance and obtaining employment. *Johnson*; *Crawl*. The record shows that

6

Petitioner and her husband had the funds to maintain the mortgage payment on their residence had they elected to do so.[4] On this basis, we affirm.

———————————————————
**BONNIE BRIGANCE LEADBETTER,**
Judge

———————————————————

[4] Petitioner also argues that her payroll deductions are $221.00 biweekly as opposed to the figure of $143.59 per month as found by the hearing examiner. The hearing examiner's figure is based on pay stubs submitted by Petitioner contained in the record. (SRR at 3b). Our review is limited to the record made before the agency. However, even assuming that Petitioner's payroll deductions have changed since the hearing, the result of this matter would be the same. The record is clear that Petitioner's circumstance is the result of decisions made long prior to any change in her current payroll deductions.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Betsy Santello,                                    :
                          Petitioner               :
                                                   :
              v.                                   :      No. 142 C.D. 2015
                                                   :
Pennsylvania Housing Finance                       :
Agency,                                            :
                          Respondent               :

# **O R D E R**

AND NOW, this 24th day of November, 2015, the order of the Pennsylvania Housing Finance Agency is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge